**Margaret M. FITZGERALD, Plaintiff,**

**v.**

**SHANNON & LUCHS CO., et al., Defendants.**

**Civ. A. No. 84–1079.**

United States District Court, District of Columbia.

Dec. 19, 1984.

Mark Richardson, Clark R. Silcox, Mc-Lean, MacIntyre, Wilson & Richardson, P.C., Washington, D.C., for plaintiff.

Michael C. Blackstone, Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff is a real estate agent who was a party to an "Independent Contractor Agreement" with the defendant, Shannon & Luchs Company, a real estate brokerage firm. Plaintiff found a buyer for a house whose owner had offered a $5,000 "bonus" to any "selling agent" who successfully negotiated a sale of the house. Shannon & Luchs collected the $5,000 bonus promised by the seller. Treating the bonus as a standard commission fee, Shannon & Luchs retained a substantial portion of the $5,000 and gave the plaintiff her usual percentage. Plaintiff, however, claims that she is entitled to the *full* $5,000, and has brought this suit in an effort to enforce her claim. Jurisdiction is assertedly by diversity. However, the plaintiff meets the jurisdictional amount for diversity, if at all, only because she has asserted a claim for punitive damages of $75,000.

### I.

At the pleadings stage, defendant moved to dismiss for lack of diversity jurisdiction on the ground that, as a matter of law, the plaintiff was not entitled to recover the punitive damages that she had claimed. In support of this motion, defendant cited *Kahal v. J.W. Wilson & Associates, Inc.*, 673 F.2d 547 (D.C.Cir.1982), where the Court of Appeals of this Circuit affirmed the dismissal of a case on similar grounds. In *Kahal*, the plaintiff had had an opportunity to respond to the defendant's interrogatories pertinent to the defendant's contention that the plaintiff was using a punitive damages claim to "shoehorn essentially local actions into federal court through extravagant or invalid punitive damage claims." *Id.* at 549. Here, by contrast, when defendant's original motion to dismiss was at issue, there had been no discovery or other factual development of the complaint's punitive damages allegations. Liberal pleading rules, accordingly, required denial of defendant's motion to dismiss at that juncture.

Since the earlier ruling on the Motion to Dismiss, however, the issues and facts have been further developed in several pleadings—defendant's Motion for Partial Summary Judgment or, in the Alternative, Judgment on the Pleadings and the accompanying Memorandum of Points and Authorities, plaintiff's response thereto, pretrial briefs filed by both parties, and plaintiff's Memorandum of Points and Authorities on Punitive Damage Claims—as well as in an extensive oral argument at which counsel for both parties argued the law and made significant factual representations and admissions. These developments now make possible the close scrutiny that *Kahal* indicates to be appropriate where, as here, "the availability of punitive damages is the *sine qua non* of federal jurisdiction," *id.* See *Bewley v. Sims*, 438 F.Supp. 708, 709 (D.Md.1977). As explained in Part III of this Memorandum, that scrutiny establishes that the punitive damage claim here, like the parallel claim in *Kahal*, does not have the requisite "colorable basis in law and fact," and that the complaint must be dismissed for want of jurisdiction. *Kahal, supra* at 549.

### II.

■ The threshold choice of law question has been resolved at oral argument by the parties' concession that all of the relevant contacts except defendant's place of incorporation (Delaware) and main office (District of Columbia) are in Maryland. Accordingly, Maryland law applies.

■ Next, the memoranda on defendant's summary judgment motion—which challenges Counts II and III of the complaint—raise several issues worth noting collaterally. Possibly to create an environment hospitable to the effort to assert a right to punitive damages, plaintiff claims

in Count II of the complaint that the defendant broker had a fiduciary responsibility to plaintiff, a selling agent, with respect to the bonus. Plaintiff relies for this proposition upon Ann.Code of Maryland Art. 56, § 224(f) which precludes an individual selling agent from

> [a]ccepting a commission or valuable consideration as a real estate salesman for the performance of any of the acts specified in this subtitle from any person except the real estate broker named in his license.

Unaided by authority, plaintiff construes the statutory language—which requires that such payments be routed from sellers to agents *through* brokers—to create in brokers a fiduciary duty to hold the payments in trust and turn them over to the trust beneficiary, i.e., the agent, plaintiff here.

Plaintiff's contention is without merit. The underlying Independent Contractor Agreement between the broker and the selling agent has none of the characteristics of a trust instrument. The agreement creates an arms-length relationship between the licensed broker as a principal and the selling agent as an independent contractor. Obviously, in light of the terms of the Independent Contractor Agreement and in the absence of Maryland authority, this Federal Court sitting in the District of Columbia could neither hold nor permit a jury to find that there was such a trust or fiduciary relationship.

■ Defendant's motion for partial summary judgment also challenges plaintiff's theory in Count III that defendant tortiously interfered with her bonus contract with the seller. Responding to that challenge, plaintiff has shifted ground, abandoning the contract interference claim in favor of a "conversion" claim. Treating the complaint as appropriately amended, the conversion claim is equally vulnerable. The very statute relied on by plaintiff for her trust theory makes it clear that an independent agent has no legal or possessory right to any bonus; the seller must pay it to the broker. Yet, a legal right to immediate possession of claimed property is a predicate to a suit for conversion. *See McClung-Logan Equipment Company v. Thomas,* 226 Md. 136, 172 A.2d 494, 498–99 (1961).

If subject matter jurisdiction over this action were present, therefore, the Court would dismiss Counts II and III of the complaint, leaving only Count I, which claims breach of contract, and Count IV, which claims fraudulent inducement (failure to tell plaintiff that she would not receive the full bonus). However, under Rule 12(h)(3) of the Federal Rules of Civil Procedure, a court may dismiss a matter for want of subject matter jurisdiction whenever that defect becomes apparent. The fuller factual exposition that has arisen as the case has developed now affords an adequate record for a ruling on the punitive damage claim, failure of which would reduce the amount in controversy to less than $10,000, oust the Court from diversity jurisdiction, and require dismissal of the entire action.

### III.

■ Under Maryland law punitive damages are not recoverable at all in actions for breach of contract. *H. & R. Block, Inc. v. Testerman,* 275 Md. 36, 338 A.2d 48 (1975). Moreover, under Maryland law, in a tort action arising out of a contractual relationship such as that created here by the Independent Contractor Agreement, "actual or express malice" is a requisite to a punitive damage claim. *See American Laundry Machinery Industries v. Horan,* 45 Md.App. 97, 412 A.2d 407, 416 (1980); *see also Saval v. BL LTD.,* 710 F.2d 1027, 1033–34 (4th Cir.1983). Such actual or express malice "has been characterized as the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *H. & R. Block, Inc. v. Testerman, supra,* 338 A.2d at 52. The seminal Maryland opinion on the subject of tort actions arising out of contract relation-

ships states that punitive damages might be awarded where, for example:

> [T]here was evidence tending to show that the defendant had caused the contract to be broken for the sole purpose, and with the deliberate intention of wrongfully injuring the plaintiff ..., *but when the object was merely to benefit itself, although the plaintiff would be thereby injured, there would be no more reason for allowing such damages than there would be in a suit by one party to a contract against the other for breach of it.*

*Knickerbocker Co. v. Gardiner Co.,* 107 Md. 556, 69 A. 405, 410 (1908), cited with approval in *H. & R. Block, Inc. v. Testerman,* 338 A.2d at 53 (emphasis added).

■ The allegations in the complaint and in plaintiff's pretrial briefs, as well as her counsel's proffers at the argument, make it clear that she will not be able to adduce any facts from which a reasonable jury could find that defendant had no legal justification for sharing the bonus with plaintiff instead of paying all of it to her, or that defendant handled the bonus in the way that it did for the sole purpose and with the deliberate intention of wrongfully injuring plaintiff—as distinguished from an intention merely to benefit itself (albeit at plaintiff's expense). The critical statute does not distinguish between commission and bonus; it requires all "valuable consideration" for selling services to go to the licensed broker. Ann.Code of Maryland Art. 56, § 224(f). Although the Independent Agency Agreement refers specifically to commissions and does not mention bonuses as such, defendant's contention that in the circumstances here the bonus could well be regarded as a form of commission subject to division between broker and agent is a wholly plausible and defensible position to take. Plaintiff's contentions that defendant misled her as to what would happen to the bonus, and as to the legal basis for splitting the bonus, fall far short of the kind of evidence of actual malice that would justify punitive damages.

The only contention that might in some circumstances arguably support a punitive damage claim sufficiently to get to the jury relates to statements allegedly made to plaintiff threatening her job if she persisted in her challenge to the splitting of the bonus. Yet plaintiff alleges only a threat: e.g., plaintiff fails to allege any acts to *implement* the alleged threat. Even if a mere threat is arguably evidence of ill will or unfair tactics, there is nothing in the proffer or its context that would permit a reasonable jury to infer that defendant engaged in the alleged threat not with the intention of asserting and maintaining a plausible legal position allowing it to advance its own commercial benefit, but rather with the sole and deliberate intention of injuring plaintiff. There is no basis in any of the allegations to conclude that defendant's "alleged breach was accompanied by the kind of egregious conduct that would justify an award of punitive damages," *Kahal v. J.W. Wilson & Associates, Inc., supra* at 549. *Cf. Sellers v. O'Connell,* 701 F.2d 575, 579 (6th Cir.1983).

Accordingly, plaintiff's complaint has failed to satisfy the jurisdictional amount requirements for maintaining an action in federal court on diversity of citizenship grounds. The accompanying order will therefore dismiss the action for lack of jurisdiction.

## ORDER

For reasons stated in an accompanying Memorandum, it is this 14th day of December, 1984, hereby

ORDERED: that the action should be, and is hereby, DISMISSED.